961 F.2d 1508
 22 Fed.R.Serv.3d 1119
 Michael DIAZ; George H. White, Regulation No. 56137,
Centennial Correctional Facility; Jesse Lagunas, Regulation
No. 51084; Michael Ingram, Regulation No. 43629, Shadow
Mountain Correctional Facility; Douglas Lee Boehmer,
Regulation No. 75095, Colorado Territorial Correctional
Facility; Flazell Jefferson Beasley, Regulation No. 753153,
Colorado Territorial Correctional Facility, by themselves
and on behalf of all others similarly situated; HIV
Positive Prisoners; HIV Negative Prisoners, Plaintiffs-Appellees,
v.
Roy ROMER, Governor, Governor of the State of Colorado;
Walter Kautzky, Executive Director of the Colorado
Department of Corrections; William Wilson, Director of
Division of Adult Services, Unit I; Carlos Baca, Director
of Division of Adult Services, Unit II; John Perko,
Director of the Division of Correctional Industries; Harry
B. Johnson, Superintendent of Centennial Facility; Harold
Henson; Thomas Cooper, Superintendent of Colorado
Territorial Correctional Facility; Frank Rice, Acting
Manager of Diagnostic Unit, Colorado Department of
Corrections, Defendants-Appellants.
 Nos. 90-1100, 90-1302.
 United States Court of Appeals,
Tenth Circuit.
 April 20, 1992.
 
 John R. Parsons, Asst. Atty. Gen., Human Resources Section, Atty. General's Office, Denver, Colo. (Duane Woodard, Former Atty. Gen.; Charles B. Howe, Former Deputy Atty. Gen.; Richard H. Forman, Former Sol. Gen.; Barbara L. Widick, Former First Asst. Atty. Gen.; Gale A. Norton, Atty. Gen.; Timothy M. Tymkovich, Sol. Gen.; Paul Farley, Deputy Atty. Gen.; and John August Lizza, First Asst. Atty. Gen., Denver, Colo., with him on the briefs), for defendants-appellants.
 David H. Miller, American Civil Liberties Union, Denver, Colo. (James E. Hartley and Peter W. Downing of Holland & Hart, Denver, Colo., with him on the briefs), for plaintiffs-appellees; and
 Norman R. Mueller of Haddon, Morgan & Foreman, Denver, Colo. (David A. Lane, Denver, Colo., and Harold A. Haddon and Caroline M. McKinnon of Haddon, Morgan & Foreman, Denver, Colo., with him on the briefs), for plaintiffs-appellees HIV-Negative Subclass.
 Before McKAY, Chief Judge, McWILLIAMS and BALDOCK, Circuit Judges.
 McKAY, Chief Judge.
 
 
 1
 The State of Colorado ("the State") objects to district court decisions regarding a proposed consent order in class-action proceedings between state prisoners and the Colorado Department of Corrections ("DOC"). This dispute arises against the backdrop of a 1979 district court finding that DOC was violating prisoners' rights under the Eighth Amendment in the areas of shelter, sanitation, food, medical care, and inmate safety. Ramos v. Lamm, 485 F.Supp. 122 (D.Colo.1979), aff'd in part and set aside in part, 639 F.2d 559 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Since 1979 the parties have negotiated a number of stipulations and consent orders to resolve the violations, and the district court has exercised continuing jurisdiction.
 
 
 2
 The current dispute derives from the Joint Motion for Entry of an Amended (Master) Consent Order ("Consent Order"), which the parties submitted to district court. Proposed paragraph 18 of the Consent Order addressed DOC's policies for testing inmates for the HIV virus and segregating inmates with positive test results. Citing potential conflicts within the prisoner class regarding the HIV policies, in September 1989 the district court created two subclasses of inmates: those whose tests were positive for the HIV virus ("HIV-positives"), and those whose tests were negative ("HIV-negatives"). At the same time, the court appointed counsel for the HIV-negatives and scheduled a hearing to determine the fairness of paragraph 18 to the entire class of prisoners.
 
 
 3
 On March 7, 1990, at the end of the hearing on fairness, the district court refused to approve paragraph 18, holding that it was not fair to all prisoners. Both subclasses of prisoners moved for and were granted attorney's fees as prevailing parties under 42 U.S.C. §§ 1983 and 1988. Defendants appeal, arguing that (1) the district court did not have jurisdiction to consider the HIV policy; (2) the court erred in creating subclasses of plaintiffs; (3) the court erred in awarding attorney's fees to the HIV-negatives; and (4) the court erred in granting a motion to compel with associated attorney's fees during discovery for these proceedings. The prisoner class has moved to dismiss the appeal. For reasons set out below, we deny the motion to dismiss the appeal, and we affirm the district court's decisions.
 
 
 4
 The prisoner class moves to dismiss the appeal, alleging first that the State's October 19, 1990 Notice of Appeal was untimely filed. On September 13, 1990, the district court ordered the State to pay attorney's fees for the two plaintiff subclasses. The HIV-negative subclass filed a motion under Fed.R.Civ.P. 59(e) to amend the judgment as to its attorney's fees on September 18, 1990, and the motion was granted on September 21, 1990. Fed.R.App.P. 4(a)(4) clearly states that a timely motion to amend a judgment will toll the time for appeal for all parties. Thus the time to appeal for all parties ran from September 21, 1990, the date of the amended judgment, rather than from the date of the original judgment. The State's Notice of Appeal was timely filed within 30 days on October 19, 1990.
 
 
 5
 The prisoner class also urges dismissing the appeal because the State appealed the same issues earlier and made substantially the same arguments. This argument is without merit. The State's earlier interlocutory Notice of Appeal, which is now moot, does not bar the current appeal.[1] The prisoner class's motion to dismiss the appeal is denied.
 
 
 6
 We turn now to the State's argument on appeal that the district court had jurisdiction only over the prisoners' constitutional claims, and not over DOC's HIV policy. In Duran v. Carruthers, 885 F.2d 1485, 1940-91 (10th Cir.1989), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990), this court found federal jurisdiction under similar circumstances in a classaction suit against New Mexico prison officials. Applying the three-part test from Local No. 93, International Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986), as adopted in Duran, we examine whether in the current case (1) the Consent Order springs from and serves to resolve a dispute within the district court's subject matter jurisdiction; (2) the Consent Order comes within the "general scope" of the case made by plaintiffs in the original complaint; and (3) the Consent Order furthers objectives upon which the complaint is based. We hold that the test is satisfied here, because the current dispute is within the "general scope" of efforts to alleviate constitutional violations originally found in Ramos v. Lamm and over which the district court had jurisdiction. The district court therefore had subject matter jurisdiction to consider the Consent Order generally and DOC's HIV policy specifically.[2]
 
 
 7
 The State next argues that the district court erred in creating two subclasses of plaintiffs. This court has previously recognized that "the district court may redefine the class to include several subclasses." Sears v. Atchison, Topeka & Santa Fe Ry., 749 F.2d 1451, 1456 (10th Cir.1984), cert. denied, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). Fed.R.Civ.P. 23(c)(4)(B) explicitly allows a court to create subclasses "[w]hen appropriate." Other circuits have described the district courts' broad discretion in this area and the need for constant sensitivity to possible conflicts within the class. E.g., Payne v. Travenol Lab., Inc., 673 F.2d 798, 812 (5th Cir.), cert. denied, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); Mendoza v. United States, 623 F.2d 1338, 1346 (9th Cir.1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); Scott v. University of Delaware, 601 F.2d 76, 86 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979).
 
 
 8
 The district court's Order which created the subclasses in this case included findings of fact and conclusions of law which explained the "clear, obvious conflict of interest" between HIV-positives and HIV-negatives regarding paragraph 18. Neither the plain language of Rule 23(c)(4)(B) nor the cases cited require the district court to make more detailed findings than those in the Order. We hold that the district court did not abuse its broad discretion when it created the subclasses.
 
 
 9
 The State argues that the district court erred in awarding attorney's fees to the subclasses, first alleging that HIV-negatives did not prevail on the issue of paragraph 18, and also claiming that the Order of September 13, 1989 improperly awarded fees in advance of legal representation. Both aspects of the argument fail. First, HIV-negatives are part of the prisoner class that prevailed in the original litigation, which spawned subsequent stipulations and consent orders. HIV-negatives did not lose their prevailing-party status when they were named a subclass. Second, the Order in question appointed counsel for HIV-negatives and established rates, but not amounts, of the attorneys' compensation. Attorney's fees were not actually awarded until September 1990, when the matter was properly before the court on motions by the subclasses, and after a hearing had been held on the amount of fees.
 
 
 10
 Case law and the plain language of 42 U.S.C. § 1988 clearly state that attorney's fees can be awarded for post-judgment monitoring and other efforts to ensure compliance with court orders in a civil rights case. Duran v. Carruthers, 885 F.2d 1492, 1495 (10th Cir.1989) (awarding fees and finding that consent decree "was only the beginning, and counsel for the plaintiffs has a continuing duty and responsibility to make sure that the defendants comply, and continue to comply, with the decree"); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir.1985); Garrity v. Sununu, 752 F.2d 727, 738 (1st Cir.1984); Miller v. Carson, 628 F.2d 346, 348 (5th Cir.1980); Northcross v. Board of Educ., 611 F.2d 624, 637 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980); see also Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (non-civil rights case citing Garrity, Miller, and Northcross with approval). As the Northcross court observed, "Services devoted to reasonable monitoring of the court's decrees ... are compensable services. They are essential to the long-term success of the plaintiff's suit." Northcross, 611 F.2d at 637.
 
 
 11
 The State argues that the district court erred in granting a motion to compel with associated attorney's fees during discovery for these proceedings. The district court's Order, which awards attorney's fees pursuant to Fed.R.Civ.P. 37(a)(4), enumerated acts by the State or its counsel that obstructed the litigation process. We have reviewed the record and find the district court's conclusions well supported. We hold, therefore, that the district court did not abuse its discretion in granting the motion to compel and in awarding attorney's fees associated with the motion. The Supreme Court has held that even severe sanctions are available to a district court under Rule 37 to penalize and deter abuse of the discovery process. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). In affirming the district court's Order here, we reiterate our statement in Gates v. United States, 752 F.2d 516, 517 (10th Cir.1985): "[T]he time has now come to put teeth in the tiger [of Rule 37]."
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 The parties briefed the issue of whether the interlocutory Notice of Appeal, which used the names of former parties in the caption, was sufficient to confer jurisdiction. Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and Fed.R.App.P. 3(c) require parties to be named with specificity. The names in the caption here represent class-action participants and government officials who are sued in their official capacities. Although the participants' names have changed over the years, the official capacities represented have remained constant. There is no question in this case of a party dropping out of the suit or of depriving a party or the court of notice regarding the identity of the appellants. Torres, which did not involve government officials sued in their official capacities, is thus inapplicable here
 
 
 [2]
 Citing an upsurge in institutional reform litigation, the Supreme Court recently held that consent decrees governing prisons or jails can be modified under a "flexible standard" where the party seeking modification establishes a "significant change in facts or law." The party need not prove a "grievous wrong" to prevail. Rufo v. Inmates of Suffolk County Jail, --- U.S. ----, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)