FILED
United States Court of Appeals
Tenth Circuit

April 22, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DWIGHT DURAN,

    Plaintiff - Appellee,

v.

MICHELLE LUJAN GRISHAM;
ALISHA TAFOYA LUCERO,

    Defendants - Appellees.

------------------------------

DAVID S. PETERSON,

    Objector - Appellant.

No. 20-2033
(D.C. No. 1:77-CV-00721-KK-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.
_____

David S. Peterson, an inmate proceeding pro se, appeals the district court's

order approving the parties' Second Revised Settlement Agreement (SRSA).  The

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

SRSA modified a 1991 Consent Decree governing conditions in New Mexico's state prisons. We have jurisdiction, *see* 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

The district court summarized the extensive history of this litigation as follows:

> This is a class action originally brought in 1977 alleging violations of the federal constitutional rights of certain inmates in the State of New Mexico's custody. By the parties' agreement, the Court entered an order on July 15, 1980, noting that the Plaintiff class had been certified under Federal Rule of Civil Procedure 23(b)(1) and (2), and redefining the class as:
>
> > all those inmates who are now, or in the future may be, incarcerated in the Penitentiary of New Mexico at Santa Fe or at any maximum, close, or medium security facility open for operation by the State of New Mexico after June 12, 1980.
>
> After extensive litigation, on June 10, 1991, the parties entered into a settlement agreement resolving all then-pending motions. The Court issued an order ("1991 Consent Decree") adopting the parties' agreement on September 20, 1991. By July 16, 1999, all of the substantive requirements in the 1991 Consent Decree had been satisfied and vacated, except for certain restrictions on overcrowding. According to the decree, these overcrowding restrictions were to remain in place in perpetuity.
>
> The litigation was dormant from late 1999 to late 2015, when a class member revived it by filing pro se motions for an emergency injunction and a contempt order. Class counsel resumed active representation of the Plaintiff class, and on August 5, 2016, with the assistance of [a magistrate judge], the parties reached a settlement of the then pending disputes. The Court approved this settlement on August 31, 2016.
>
> Almost a year later, on July 5, 2017, class counsel filed Plaintiffs' Motion for Declaratory, Injunctive, and Remedial Relief regarding Violations of the Court's Stipulated Orders, alleging that Defendants were violating the 1991 Consent Decree and the parties' 2016 settlement agreement. That motion remains pending, as do two additional motions for declaratory, injunctive, and remedial relief that class counsel later filed.

2

The Plaintiff class has alleged ongoing violations of the Eighth and Fourteenth Amendments to the United States Constitution, including unreasonable risks to class members' health and safety due to overcrowding, violence, misclassification, disproportionate discipline, understaffing, environmental conditions including vermin and constitutionally inadequate bathroom facilities and plumbing, constitutionally inadequate healthcare, and failure to timely release inmates at prison facilities operated by the New Mexico Corrections Department ("NMCD").

Defendants opposed Plaintiffs' motions. They also filed motions to dismiss seeking termination of all prospective relief and an automatic stay on December 5, 2018. However, Defendants subsequently withdrew these motions without prejudice to allow the parties to pursue settlement negotiations. The parties have conducted extensive investigation and discovery regarding the claims and defenses raised in their respective motions.

. . .

The parties . . . filed a second Joint Motion for Preliminary Approval of Settlement Agreement on August 21, 2019. . . .

On August 28, 2019, the Court held a hearing on the parties' August 21, 2019 motion. At the hearing, counsel and NMCD Cabinet Secretary Alisha Tafoya Lucero made presentations and responded to the Court's questions regarding the parties' agreement.

The Court entered an Order Granting Preliminary Approval of Class Action Settlement Agreement, and Approving and Directing the Issuance of Notice to Plaintiff Class Members ("Order Granting Preliminary Approval") on September 5, 2019. In its Order Granting Preliminary Approval, the Court preliminarily held that the Revised Settlement Agreement was fair, adequate, reasonable, and likely to meet the requirements of Federal Rule of Civil Procedure 23(e) and the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626.

The Court also approved the Notice to Plaintiff Class Members ("Notice") attached to the Order Granting Preliminary Approval and found that it satisfied the requirements of Rule 23 and due process. The Court directed Defendants to provide the Notice and Revised Settlement Agreement to class members by posting them in English and Spanish in the law library, general library, dining facilities, recreational facilities, and on a bulletin board in every unit in every NMCD facility in New Mexico, from September 24, 2019 through December 23, 2019. The Court further

3

directed Defendants to provide the Notice and Revised Settlement Agreement to each inmate housed in any segregated housing unit between September 24, 2019 and December 23, 2019, in English or Spanish at the inmate's election.

Defendants provided notice of the proposed settlement to the Plaintiff class as the Court directed, including at covered NMCD facilities operated by private contractors. Defendants monitored whether the Notice and Revised Settlement Agreement remained posted as prescribed during the objection period and, when inmates at the Guadalupe County Correctional Facility ("GCCF") removed some posted copies, replaced them reasonably promptly. In fact, Defendants went beyond the Court's requirements to ensure that all class members at GCCF received notice of the proposed settlement, posting extra copies of the Notice and Revised Settlement Agreement in the required locations and placing these documents on an "inmate television systems information channel."

In its Order Granting Preliminary Approval, the Court directed any class member who wished to object to the Revised Settlement Agreement to file his or her objections in writing by December 23, 2019 and directed Defendants to allow class members to submit timely objections free of charge.

Between September 12, 2019 and January 27, 2020, approximately 152 members of the Plaintiff class filed objections to the Revised Settlement Agreement. . . .

The court has also carefully reviewed and considered the objections that seven class members sent to class counsel between September 24, 2019 and December 23, 2019 and later directed counsel to file.

R. at 89-94 (paragraph numbering, record citations and footnotes omitted).

The SRSA contained minor revisions to the Revised Settlement Agreement.

The district court determined the SRSA should be finally approved under the

standards set forth in Rule 23(e) and the PLRA. It made extensive findings in

support of approval of the settlement and found that none of the objections warranted

its disapproval. Peterson, who objected to the settlement, filed this pro se appeal.

4

## DISCUSSION

On appeal, Peterson raises six objections to the order approving the SRSA. He argues that (1) the notice provided to class members under Fed. R. Civ. P. 23 contained inadequate information; (2) the 1991 Consent Decree was not terminable under the PLRA; (3) the state violated the 1991 Consent Decree, because the cells at the Clayton Prison do not provide 60 square feet of space per prisoner; (4) the SRSA violates a New Mexico statute that limits prison population; (5) the Plaintiffs' Class Counsel abandoned the class by failing to make or support the arguments he now raises; and (6) the district court lacked personal and subject-matter jurisdiction to resume enforcement of this case in 2015.

Most of these arguments involve issues of law, which we review de novo. *See United States v. Finnesy*, 953 F.3d 675, 682 (10th Cir. 2020) (district court's jurisdiction), *cert. denied*, ___S. Ct.___, 2021 WL 78262 (U.S. Jan. 11, 2021) (No. 20-5746); *C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (personal jurisdiction); *DeJulius v. N. Eng. Health Care Empls. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005) (adequacy of settlement notice to class members); *May v. Segovia*, 929 F.3d 1223, 1227 (10th Cir. 2019) (questions of statutory interpretation, including proper interpretation of the PLRA); *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 730 (10th Cir. 2020) (district court's interpretation of state law). But, "[w]e review the district court's decision to approve a class settlement for an abuse of discretion." *Tennille v. W. Union Corp.*, 785 F.3d 422, 434 (10th Cir. 2015). This includes the issue of whether class counsel

adequately represented the interests of the class.  *See Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

### 1.  Jurisdictional Issues

We begin with Peterson's threshold challenges to personal and subject-matter jurisdiction.  He first argues that once the 1991 Consent Decree's relief provisions were satisfied, ongoing federal-court jurisdiction over the decree terminated.  This argument lacks merit.  This case was reactivated in 2015 in response to a class member's complaint about alleged overcrowding.  The Consent Decree itself had not been vacated and its overcrowding provisions had never been terminated.  Those provisions were to exist in perpetuity and to remain "enforceable in any federal or state court of competent jurisdiction."  Supp. R., Vol. 1 at 255.  Although the parties ultimately agreed through the SRSA to settle their differences on a wide range of issues, the district court's power to approve the SRSA arose from a permissible exercise of the retained jurisdiction specified in the parties' settlement agreement and incorporated in the 1991 Consent Decree.

Peterson next argues that the class member who complained in 2015 failed to exhaust his prison remedies, as the PLRA requires.  But he fails to show that the PLRA's exhaustion requirement applies to Class Counsel's subsequent efforts to enforce the Consent Decree.  *See* 42 U.S.C. § 1997e(a) ("*No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.*" (emphasis added)); *see, e.g.,*

6

*Clark v. California*, 739 F. Supp. 2d 1168, 1232 (N.D. Cal. 2010) (concluding neither

defendants' motion to terminate a pre-PLRA consent decree, nor inmates' motion to

enforce it, triggered PLRA's exhaustion requirement).[1]

Peterson also asserts that the district court lacked personal jurisdiction over the

defendants and the class members, because no new complaint was filed or served.

But Class Counsel's efforts to enforce the Consent Decree did not require service of a

new complaint. *See Floyd v. Ortiz*, 300 F.3d 1223, 1227 (10th Cir. 2002) (holding

motion seeking to enforce consent decree did not require service of a new complaint).

Peterson next contends no statute or constitutional provision grants

subject-matter jurisdiction over this proceeding. We previously recognized that the

underlying action that produced the 1991 Consent Decree was founded on

federal-question jurisdiction. *See Duran v. Carruthers*, 885 F.2d 1485, 1486

(10th Cir. 1989) (noting jurisdiction was based on 28 U.S.C. § 1331). Peterson fails

to show that this recognition was erroneous. And, as we have noted, the district court

exercised its retained jurisdiction to approve the SRSA.

Finally, Peterson argues the Eleventh Amendment bars this action to enforce

what he refers to as a settlement contract between the class members and the State of

New Mexico. We previously held that the Eleventh Amendment did not require the

---

[1] In a single sentence, Peterson complains that "[n]o free process was requested nor a filing fee paid" in connection with the reactivation of the case. Aplt. Opening Br. at 11. Even if we were to consider this undeveloped argument, Peterson fails to show that Class Counsel was required to pay a filing fee in order to seek reactivation or enforcement within this action of the 1991 Consent Decree.

7

district court to vacate a previous consent decree entered in this case on July 14, 1980. *See Duran*, 885 F.2d at 1489-91 (rejecting Eleventh Amendment challenge to 1980 consent decree under doctrine of *Ex parte Young*, 209 U.S. 123 (1908)). The same rationale applies to enforcement of the 1991 Consent Decree.

### 2. Notice to Class Members

The district court approved "the form and content of the notice as satisfying the requirements of [Rule 23] and due process." R. at 86 (internal quotation marks omitted). But Peterson complains that the Rule 23 notice failed to provide class members with adequate historical facts and legal analysis to permit them to make a knowing and intelligent decision concerning the settlement. Specifically, he contends the notice failed to (1) include a copy of the 1991 settlement agreement; (2) discuss a PLRA provision concerning private settlement agreements; (3) identify or discuss a New Mexico statute concerning prison overcrowding; (4) provide copies of the documents or pleadings filed in this case; and (5) discuss alternatives to settlement, given the defendants' alleged violations of the Consent Decree.

None of these arguments has merit. The notice informed class members about the 1991 settlement agreement, its overcrowding provisions that were intended to be perpetual, and the risk that these provisions could be terminated under the PLRA if a settlement were not achieved. *See* Supp. R., Vol. 2 at 29-30. Also, for reasons we discuss elsewhere in this order and judgment, Peterson misunderstands the effect of the statutes he cites—the PLRA provision concerning private settlement agreements and a New Mexico statute concerning overcrowding. The notice was not deficient

8

for failing to discuss these provisions. The notice provided to class members was adequate.

### 3. Consent Decree and PLRA

Peterson argues that the 1991 Consent Decree was "ended" or "wiped out," Aplt. Opening Br. at 3, 5, leaving only "a contract between the State and its prisoners," *id.* at 5. He contends this contractual agreement is exempt from PLRA's termination provisions, citing 18 U.S.C. § 3626(c)(2), which exempts private settlement agreements from PLRA's limitations on relief.

First, his contention that the 1991 Consent Decree was terminated is incorrect; as we have noted, its overcrowding provisions were designed to remain in effect even after the other provisions were vacated. More importantly, although the parties did reach a settlement agreement in 1991, which was incorporated into the 1991 Consent Decree, the Consent Decree does not meet the PLRA's definition of a "private settlement agreement," which only applies to agreements that are not generally subject to judicial enforcement, *see id.* § 3626(g)(6). Rather, it is a "consent decree" under the statute, because it provides "relief *entered by the court* that is based in whole or in part upon the consent or acquiescence of the parties," *id.* § 3626(g)(1) (emphasis added). Because the 1991 Consent Decree was entered by the court and provided for prospective relief, it is subject to the PLRA's termination provisions. Peterson's argument therefore lacks merit.

### 4. Size of Cells at Clayton Prison

Peterson contends the State of New Mexico breached the 1991 Consent Decree by providing less than 60 square feet per prisoner at the Northeastern New Mexico Correctional Facility in Clayton. But the factual record presented in this case disproves his argument. *See* Supp. R., Vol. 3 at 20 (stating that double-celled inmates at Clayton Prison are provided with over 120 square feet of space). To the extent Peterson argues that each inmate in double cells has only approximately 51 square feet of *unencumbered* space, he fails to show that the 60-foot requirement in the 1991 Consent Decree applies to unencumbered space.

### 5. New Mexico Corrections Population Control Act

The SRSA limits prison population to 120 percent of capacity. Peterson argues this violates the Corrections Population Control Act, a New Mexico statute that he claims limits a prison's population to 100 percent of its capacity. *See* N.M. Stat. Ann. § 33-2A-6 (2002). But as the district court noted, § 33-2A-6 does not actually limit New Mexico prisons to 100 percent of capacity. Instead, the statute provides certain mechanisms that "shall be taken to reduce capacity" where the inmate population "exceeds one hundred percent of rated capacity for a period of thirty consecutive days." *Id.* The district court correctly interpreted New Mexico law to reach its conclusion that "far from conflicting with the [SRSA], [§ 33-2A-6] actually provides a mechanism Defendants may use to reduce excessive prisoner population and thereby remain in compliance with the [SRSA's] cap" and the SRSA

10

"in no way purports to override or abrogate [§ 33-2A-6's] requirements." R. at 86. Peterson's challenge lacks merit.

### 6. "Abandonment" by Plaintiffs' Class Counsel

The district court determined that Class Counsel adequately represented the class. *See* Fed. R. Civ. P. 23(e)(2)(A). Peterson disagrees; he argues instead that counsel abandoned the class. He complains, first, that counsel failed to raise the square-feet-per-prisoner issue at Clayton Prison. But, as we have seen, that issue lacks merit. Counsel's failure to raise it therefore did not amount to inadequate representation.

Peterson next complains that Class Counsel "refused to defend the 1991 settlement contract" and failed to react "when the state violated the 1991 settlement contract [by using] a 1996 law to attack the contract," presumably referring to the PLRA's termination provision. Aplt. Opening Br. at 10. This argument appears to rest on Peterson's mistaken belief that the 1991 Consent Decree was exempt from termination under the PLRA. To the contrary, Class Counsel correctly informed class members of the high risk that the Consent Decree could be terminated under the PLRA and negotiated the binding and enforceable benefits for the class contained in the SRSA.

Peterson also argues that Class Counsel failed to assert the district court's lack of jurisdiction under the Eleventh Amendment, failed to raise the alleged violation of the New Mexico Corrections Population Control Act, and failed to allow the class to make a knowing and intelligent decision concerning the SRSA. But as we have seen,

11

these issues also lack merit, and class counsel did not behave inadequately insofar as they are concerned. Peterson fails to show the district court erred in concluding that Class Counsel "fairly, adequately, zealously, and effectively" represented the class. R. at 87.

## CONCLUSION

We affirm the district court's decision approving the SRSA.

Entered for the Court


Jerome A. Holmes
Circuit Judge

20-2033, *Duran v. Grisham*

**TYMKOVICH**, Chief Judge, dissenting.

I dissent from the majority's order and judgment because I believe the district court did not have subject-matter jurisdiction to approve the Second Revised Settlement Agreement ("SRSA").

"Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). District courts retain jurisdiction under federal law to enforce their consent decrees, but this does not give them "free-ranging ancillary jurisdiction" to do as they please. *Keepseagle v. Vilsack*, 815 F.3d 28, 33 (D.C. Cir. 2016) (internal quotation marks omitted). Instead, district courts possess only two types of authority over consent decrees: (1) to "interpret and enforce a decree to the extent authorized either by the decree or by the related order" and (2) to "modify a decree pursuant to Federal Rule of Civil Procedure 60(b)(5)." *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C. Cir. 2002).

The district court certainly had jurisdiction to enforce the extant provisions of the 1991 Consent Decree. This was the sole jurisdictional basis on which the district court justified returning to the case in 2016. The scope of this jurisdiction is narrow: to enforce the overcrowding provisions that were set to last in

perpetuity.  *See Keepseagle*, 815 F.3d at 36 (warning an agreement does not "confer[] jurisdiction on the District Court unless the conduct at issue involves one of the specified, narrow ways in which the Court maintained jurisdiction" over that agreement). The SRSA, however, reaches out and touches on a wide range of unrelated topics—cleanliness, toilet-to-inmate ratios, job fairs, and calculation of good time, just to name a few.  It far exceeds the court's enforcement authority.

Furthermore, the district court was not exercising its authority to modify the decree pursuant to Rule 60(b)(5).  Rule 60 allows courts "*[o]n motion and just terms*" to "relieve a party . . . from a[n] . . . order" if applying it prospectively is no longer equitable.  Fed. R. Civ. P. 60(b)(5) (emphasis added). But neither of the parties brought a motion for modification of the consent decree here.  Instead, the class sought to enforce the overcrowding provisions from the 1991 Consent Decree.  Then, under the auspices of enforcement, the parties engaged in settlement negotiations stretching far beyond the district court's limited jurisdiction.  In seeking approval of the SRSA, the parties side-stepped the proper process under Rule 60, using the court's enforcement jurisdiction to resolve claims unrelated to the 1991 Consent Decree.

If the parties want to settle new claims, they can contract and then seek enforcement in state court.  But simply because the federal district court retained

jurisdiction over the 1991 Consent Decree does not justify the court now giving its imprimatur to the new issues addressed in the SRSA.

For the foregoing reasons, I respectfully dissent from the majority's order and judgment.