885 F.2d 1492
 Dwight DURAN, Lonnie Duran, Sharon Towers, and all others
similarly situated, Plaintiffs-Appellees,
v.
Garrey CARRUTHERS, Governor of the State of New Mexico, O.L.
McCotter, Secretary of Corrections, and Robert J.
Tansy, Warden of the Penitentiary of New
Mexico, Defendants-Appellants.
 No. 89-2041.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 15, 1989.
 
 Martha J. Kaser of Sutin, Thayer & Browne (Norman S. Thayer, Saul Cohen, and Stephany S. Wilson of Sutin, Thayer & Browne, Albuquerque, N.M., Hal Stratton, Atty. Gen., Randall W. Childress, Deputy Atty. Gen., and Charles R. Peifer, Chief Asst. Atty. Gen., Santa Fe, N.M., and Joel I. Klein and Paul M. Smith of Onek, Klein & Farr, Washington, D.C., with her on the brief), for defendants-appellants.
 Alvin J. Bronstein (Elizabeth Alexander and Mark Lopez, Nat. Prison Project, American Civ. Liberties Union, Washington, D.C., and Philip B. Davis, Albuquerque, N.M., with him on the brief), for plaintiffs-appellees.
 Before SEYMOUR, EBEL, and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 In 1977, Duran, and others, all inmates at the Penitentiary of New Mexico ("PNM"), brought a class action against the Governor of New Mexico, and other state officials, including the Warden of the PNM, alleging that in their operation of the penitentiary the defendants, acting under the color of state law, violated the plaintiffs' federal rights, both constitutional and statutory, in violation of 42 U.S.C. Sec. 1983. In 1980, a consent decree agreed to by the parties was entered by the district court. This decree was comprehensive in nature and set forth in detail rules and regulations which would govern the defendants in their operation of the prison.
 
 
 2
 However, the 1980 decree did not end the matter. Subsequent thereto, both plaintiffs and defendants monitored the compliance by the parties with the decree. Also, plaintiffs, on occasion, sought to hold the defendants in contempt for noncompliance. In turn, the defendants, on occasion, sought modification or outright vacation of the consent decree. Many of these disputes were settled by agreement of the parties, although the consent decree itself remained in force and effect.
 
 
 3
 In 1987, the defendants sought to vacate certain parts of the 1980 consent decree, contending that portions of the decree were not tied to, nor did they tend to vindicate, federal rights, and that under Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), a federal district court was barred under the eleventh amendment from thus enjoining state officials. The district court, after hearing, denied the motion to vacate. Duran v. Carruthers, 678 F.Supp. 839 (D.N.M.1988). The defendants appealed the district court's order denying their motion to vacate. We have this date affirmed the district court's order. See Duran v. Carruthers, 885 F.2d 1485 (10th Cir. Sept. 15, 1989).
 
 
 4
 The present appeal is from two orders of the district court awarding plaintiffs' attorneys' fees and costs. The first order was entered by the district court on October 25, 1988, and covers work done by plaintiffs' counsel, and costs incurred, between October 3, 1985, and June 30, 1986. The total amount of that award, including attorneys' fees and costs, was $77,611.38.
 
 
 5
 The second order appealed from was entered November 2, 1988, and covers work done by plaintiffs' counsel, and costs incurred, between July 1, 1986, through April 30, 1987. The total amount of that award, including attorneys' fees and costs, was $325,091.97.
 
 
 6
 As stated, the first of the two orders involved in the present appeal was entered on October 25, 1988. There was no hearing held on the matter, and it was decided by the district court on the basis of the plaintiffs' amended motion for attorneys' fees and costs, including itemized statements in support of the motion, and the defendants' response thereto. In that order the district court held that post-judgment services necessary to reasonable monitoring of the consent decree were compensable under 42 U.S.C. Sec. 1988. However, the district court noted that in awarding fees and costs it was "faced with ... [certain] difficulties." Namely, the plaintiffs in their amended motion stated that they were not seeking attorneys' fees in connection with a contempt citation, but their amended summary did not isolate those fees and costs which were attributable to the contempt proceeding. In the same vein, the district court also stated that there were other inconsistencies between the amounts claimed in the amended motion and the amended summary. Because of these "difficulties," the district court "invited" both parties to request the district court to amend the order should they believe that the district court erred in either awarding fees and costs that were improper or in not awarding fees and costs which were proper. The district court went on to itemize hours expended, rejecting certain claims as duplicative or unnecessary, multiplying the hours by a reasonable hourly rate, granting certain costs and rejecting others, and eventually arrived at a total figure of $77,611.38.
 
 
 7
 The defendants filed a timely request to amend the district court's order of October 25, 1988. They first asked that the district court amend its order to specifically provide that the October 25 order was final and appealable and suggested several ways this could be done. By their motion the defendants also sought amendment of the October 25, 1988 order to delete post-judgment interest. The defendants also sought amendment of the October 25 order so as to eliminate any award of attorneys' fees for plaintiffs' monitoring of the defendants' compliance with the consent decree. The request to amend did not challenge the district court's computation or suggest any clerical errors.
 
 
 8
 On January 23, 1989, the district court granted, in part, defendants' motion to amend, granting that part of defendants' motion which sought to make the October 25 order final and appealable by incorporating the language of Fed.R.Civ.P. 54(b). However, the district court denied the balance of the motion. In so doing, the district court indicated that the provision in the October 25 order inviting counsel to file a motion to amend was for the purpose of correcting any "clerical or computational error" and that it did not propose to "otherwise" amend its earlier order.
 
 
 9
 As stated, the second order involved in this appeal was entered November 2, 1988. The order was based on plaintiffs' motion and application for attorneys' fees and costs for the period from July 1, 1986, through April 30, 1987, but also included attorneys' fees and costs incurred in connection with a contempt matter which dated back to 1985. The defendants filed a response to plaintiffs' motion, to which response plaintiffs filed a reply. The district court determined that a hearing was unnecessary and based its order on the record.
 
 
 10
 Again, the district court held that plaintiffs were entitled to be reimbursed for their post-judgment services necessary for reasonable monitoring of defendants' compliance with the consent decree. And again, the district court was concerned about the possibility of "duplication" and granted the parties 15 days to request amendment of the November 2 order. The district court proceeded to rule that certain of the hours claimed were unnecessary or duplicative, and, multiplying the allowable hours by a reasonable hourly rate, as well as identifying the allowable costs, arrived at a total figure of $325,091.97.[1]
 
 
 11
 The defendants filed a timely request for amendment of the November 2 order. The defendants first asked the district court to amend the order to specifically state that the order was final and appealable and suggested alternative ways this could be done. The defendants also asked that the award of post-judgment interest be deleted, arguing that such interest was improper regardless of whether the ruling was a final order or an interim order. Also, in line with their earlier request to amend the October 25 order, the defendants objected to any award for plaintiffs' monitoring of defendants' compliance with the consent decree.
 
 
 12
 The district court granted the defendants' request that the November 2 order be amended so that it would be final and appealable and added to its order the language of Fed.R.Civ.P. 54(b). The balance of the defendants' request to amend was denied, the district court indicating that it did not propose to change its position on "substantive" matters, and that counsel had not suggested that there were any "clerical or computational errors" in the November 2 order.
 
 
 13
 It is agreed that an appellate court plays a "limited role" in reviewing a district court's award of attorneys' fees and costs, and deference is given to a district court's judgment on the matter, since the district court is in a better position to assess the course of litigation and quality of work. However, one who seeks attorneys' fees and costs bears the burden of first establishing his, or her, entitlement thereto and thereafter must also establish the appropriate time expended and a reasonable hourly rate therefor. The amount of an award of attorneys' fees and costs will be upset on appeal only if it represents an abuse of discretion. See Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir.1986) for an extended discussion of this matter. "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical." United States v. Wright, 826 F.2d 938, 943 (10th Cir.1987).
 
 
 14
 Both in the district court, and on appeal, the defendants challenge plaintiffs' entitlement to fees and costs incurred by them in monitoring defendants' compliance, or lack of it, with the myriad terms and provisions in the 1980 consent decree which govern the defendants in their operation of the penitentiary. In thus arguing, the defendants recognize that there are cases which have permitted an award of attorneys' fees for post-judgment monitoring. See Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); Miller v. Carson, 628 F.2d 346 (5th Cir.1980); and Garrity v. Sununu, 752 F.2d 727 (1st Cir.1984). Counsel argues that those cases should not be followed in the instant case for the reason that a Special Master, appointed in 1983 by agreement of the parties, has been monitoring defendants' compliance, and also that the New Mexico Department of Corrections has put in place an "internal monitoring structure." Such being the case, counsel describes plaintiffs' monitoring as "essentially gratuitous, self-initiated and redundant," as well as being "unnecessary, duplicative and superfluous."
 
 
 15
 Pursuant to the 1980 consent decree, the New Mexico Department of Corrections created an internal monitoring body to check out defendants' compliance with the terms and provisions of the agreement, an agreement which the defendants voluntarily entered into in 1980. In 1981 the defendants' compliance monitor filed two reports which were quite critical of the defendants' efforts to comply. Shortly thereafter that monitor was discharged. In any event, the internal monitoring scheme was not particularly effective, and in 1983, by agreement of the parties, the district court entered an Order of Reference which included the appointment of a Special Master for the purpose of monitoring defendants' compliance. The Special Master has since filed some 25 reports. Under the agreement, the parties have 15 days after receipt of such report to file objections. If a particular matter cannot be resolved by the parties and the Special Master, a party may request a court hearing.
 
 
 16
 As indicated, counsel argues that because of the Special Master, and the defendants' own monitoring of its degree of compliance, plaintiffs' monitoring is unnecessary and duplicative. With this argument we do not agree. To so hold would mean that the plaintiffs must accept reports of the Special Master and the defendants' own compliance officer at face value and they would be unable to make any real challenge, backed with facts established by monitoring, to such reports. See, e.g., McDonald v. Armontrout, 860 F.2d 1456 (8th Cir.1988) ("perseverance and a watchful eye" enabled plaintiffs to file a motion for contempt, to secure a compliance monitor and to obtain an agreement supplementing consent decree). Under the consent decree, the plaintiffs' counsel are charged with continuing duties and responsibilities. For example, the consent decree provides that portions thereof shall become inoperative in case of an "emergency," but reserves to the plaintiffs the right to contest the existence of an emergency. Also, by way of example, paragraph six of the 1980 agreement requires the defendants to advise the plaintiffs of any "implementation" sought by defendants and grants the plaintiffs time to object if they believe that the implementation lessens the benefits granted them by the 1980 consent decree. Further, if the matter cannot be resolved by the parties, the consent decree provides for a court hearing. In short, the 1980 consent decree was only the beginning, and counsel for the plaintiffs has a continuing duty and responsibility to make sure that the defendants comply, and continue to comply, with the decree.
 
 
 17
 Wuori v. Concannon, 551 F.Supp. 185 (D.Maine 1982) and Brewster v. Dukakis, 544 F.Supp. 1069 (D.Mass.1982), modified on other grounds, 786 F.2d 16 (1st Cir.1986), both involved consent decrees with a Special Master to monitor the parties' compliance therewith. In each instance, the court awarded the plaintiffs attorneys' fees and costs incurred in their own monitoring activities. In Brewster, at page 1072, Judge Frank H. Freedman spoke as follows:
 
 
 18
 Plaintiffs' counsel have played a vigorous and necessary role in implementation. They have assisted in the drafting of regulations, negotiated myriad administrative disputes with the defendants without the necessity of court intervention, consulted with the court-appointed Monitor and participated in mediation with the Monitor regarding disputes not subject to administrative resolution, evaluated the progress towards implementation of the Decree through frequent meetings with Department of Mental Health personnel, reported and vigorously pressed charges of client abuse or neglect both in the community and in the hospital, represented clients during hearings on the drafting of individual service plans called for in the Decree, negotiated several amendments to various paragraphs of the Decree and participated in final negotiations around issues left open by the Decree itself. Several evidentiary hearings on issues such as human resources, legal advocacy and budgetary matters have taken place before this Court, particularly in the past two years. Plaintiffs' counsel have represented the class in three hearings before the First Circuit Court of Appeals.
 
 
 19
 As in other institutional reform litigation, the entry of the Court's judgment has not terminated the role of the plaintiffs' counsel. In important respects, entry of judgment has represented only a beginning. Without determined, competent and dedicated representation, the provisions of this Consent Decree might have had little practical significance for the class members.
 
 
 20
 Judge Freedman's comment concerning the role of plaintiffs' counsel in the case before him aptly describes the role of plaintiffs' counsel in the present case.
 
 
 21
 A portion of the November 2 award of attorneys' fees and costs was for legal services rendered in connection with a motion to hold the defendants in contempt for noncompliance with the 1980 consent decree, which motion was later withdrawn as a result of a stipulated agreement between the parties. So far as we can tell from the record before us, defendants did not raise this matter in their request to amend the November 2 order. Be that as it may, counsel argues in this Court that since the motion to hold in contempt was withdrawn, the plaintiffs did not "prevail" on the matter, as required by 42 U.S.C. Sec. 1988. Not having urged this particular matter in their post-order request to amend, it is doubtful that the matter can be raised here on appeal. Regardless, the argument is without merit.
 
 
 22
 At or about the time when the motion to hold the defendants in contempt was pending, the defendants had themselves filed motions to modify the 1980 consent decree with respect to living conditions, mental health, education, and medical services, inmate activities, and double-celling. The parties then entered into an agreement whereby plaintiffs agreed to withdraw their contempt motion and the defendants agreed to withdraw their requests for modification. The fact that defendants reserved the right to file a similar motion sometime in the future doesn't alter the fact that the plaintiffs, for the time being at least, caused the defendants to withdraw their request for wholesale modification of the consent decree. To "prevail" does not mean that a plaintiff in a proceeding of this sort must obtain "total victory" after a full trial. 42 U.S.C. Sec. 1988 contemplates that there will be an award of attorneys' fees and costs if the plaintiff vindicates his or her rights through settlement.[2] Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); Chicano Police Officers Ass'n v. Stover, 624 F.2d 127, 131 (10th Cir.1980).
 
 
 23
 Defendants' remaining arguments for reversing the district court's two orders for attorneys' fees and costs are also without merit. Some, so far as we can tell, were not urged by defendants in their post-order requests to amend. In their post-order requests to amend both orders, the defendants did not challenge the district court's computation, nor did they suggest that plaintiffs were being awarded attorneys' fees to resist motions of the defendants which have not yet been heard.
 
 
 24
 Finally, the fact that the defendants intended to appeal the district court's denial of the motion to vacate did not preclude the district court from awarding attorneys' fees for services rendered in resisting the motion to vacate. This argument is somewhat mooted since we have this date affirmed the district court's order denying defendants' motion to vacate. The award of attorneys' fees in the instant case was not premature.
 
 
 25
 In sum, the district court did not abuse its discretion, but gave the matter careful consideration. The district court did not give the plaintiffs' attorneys carte blanche, as is suggested by counsel. The October 25 order reduced plaintiffs' request by $16,844.66, and the November 2 order reduced plaintiffs' request by $59,431.27.[3]
 
 
 26
 Judgments and Orders affirmed.
 
 
 
 [1]
 Both the October 25 and November 2 orders covered the same type of services and costs: ongoing consent decree monitoring activities, including monitoring in connection with a contempt proceeding initiated by the plaintiffs; activities connected with defendants' motion for vacation or modification of the consent decree; and a motion by defendants for double-celling of inmates, which motion the defendants withdrew and later filed in a revised motion for vacation or modification of the consent decree
 
 
 [2]
 We reject out of hand a suggestion that plaintiffs did not "prevail" within the meaning of 42 U.S.C. Sec. 1988 when the 1980 consent decree was entered. A reading of the "book-like" decree would indicate almost "total victory" for the plaintiffs
 
 
 [3]
 The plaintiffs in this court ask that they be awarded attorneys' fees and costs for services rendered in resisting in this Court the present appeal of the defendants and in the companion appeal, Duran v. Carruthers, 885 F.2d 1485 (10th Cir.1989). This is a matter which should be handled initially in the district court