**Walter Stephen JACKSON, et al., Plaintiffs,**

v.

**LOS LUNAS CENTER, et al., Defendants,**

and

**The Arc of New Mexico, Intervenor,**

and

**Mary Terrazas, et al., Intervenors.**

No. CIV 87–0839 JP/LCS.

United States District Court, D. New Mexico.

May 24, 2007.

---

8. Counsel informed the Court at the March 27 hearing that he no longer wished to continue questioning Mr. Devaney.

Philip B Davis, Albuquerque, NM, for plaintiffs.

Judith Reed, Office of General Counsel, Dept of Health, State of New Mexico, Santa Fe, NM, for defendants.

### MEMORANDUM OPINION AND ORDER

PARKER, Senior District Judge.

On December 8, 2006, Plaintiffs filed Plaintiffs' Motion for Attorneys' Fees and Expenses for July–September 2006 (Doc. No. 1534). More than two months later, on February 27, 2007, Defendants filed a Motion for Leave to Amend Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses and Defendants' Request that the Court Impose Clear Guide-

lines for the Payment of Attorneys' Fees (Doc. No. 1561). Having reviewed the briefs, the various exhibits, and the relevant law, the Court will: 1) grant Defendants' motion for leave to amend their opposition to the extent that the Court considers it in deciding Plaintiffs' motion for attorneys' fees and expenses, 2) grant Plaintiffs' motion for attorneys' fees and expenses in full for a total award of $91,540.08 (including gross receipts taxes),[1] and 3) deny Defendants' request to impose guidelines for determining attorneys' fees and expenses.

### A. Discussion

On July 19, 2006, Defendants notified Plaintiffs that they would not continue to negotiate on a monthly basis attorneys' fees and expenses incurred by Plaintiffs, and that they would not agree to an increase in billing rates for Plaintiffs' attorneys. Consequently, Plaintiffs moved for an award of attorneys' fees and expenses under 42 U.S.C. § 1988(b) and 42 U.S.C. § 12205 for July through September 2006. Both §§ 1988(b) and 12205 allow the Court, in its discretion, to award reasonable attorney's fees and expenses to a party who prevails under 42 U.S.C. § 1983 or under the Americans with Disabilities Act. Plaintiffs contend that when a party prevails by obtaining a consent decree, that party's attorney is entitled to reasonable attorney's fees and expenses under §§ 1988(b) and 12205 for monitoring the implementation of the consent decree. Defendants contend: 1) Plaintiffs are not entitled to attorneys' fees and expenses for post-judgment compliance proceedings which are prosecutorial in nature; 2) Plaintiffs are not entitled to attorneys' fees and expenses for their attorneys' monitoring activities; 3) Plaintiffs are not

---

1. In Defendants' amended opposition to the motion for attorneys' fees and expenses, Defendants argue that Plaintiffs are entitled to an award of only $30,660.31.

entitled to attorneys' fees and expenses for their attorneys' activities which go beyond monitoring; and 4) Defendants have particularized objections to the bills and expenses sought by Plaintiffs. Defendants also assert that the Court should establish guidelines for future determinations of attorneys' fees and expenses incurred by Plaintiffs.

*1. Were Plaintiffs' Attorneys' Post–Judgment Actions During July Through September 2006 Prosecutorial in Nature?*

Defendants contend first that Plaintiffs' attorneys' post-judgment actions during July through September 2006 have not entailed monitoring the implementation of the consent decree but instead have consisted of prosecutorial actions. Defendants argue that Plaintiffs should not be paid for "prosecuting" the Defendants "[s]ince there has been no post-judgment compliance proceedings creating a change in legal relationship for the period of time Plaintiffs seek compensation...." Defendants' Brief in Support of Their Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses and Defendants' Request that the Court Impose Clear Guidelines for the Payment of Attorney's Fees (Response)(Doc. No.1547) at 3, filed Dec. 22, 2006. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)(a party is "prevailing" and therefore entitled to reasonable attorneys' fees only if there is a "judicially sanctioned change in the legal relationship of the parties."). In other words, Defendants argue that Plaintiffs are not prevailing parties because Plaintiffs have not yet successfully prosecuted the Defendants with respect to post-judgment activities.

Defendants base their contention that Plaintiffs' attorneys' actions are prosecutorial in nature on the following statement in Plaintiffs' Memorandum Brief in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses for July–September 2006 (Plaintiffs' Memorandum Brief)(Doc. No.1535) at 2: "The time and expenses for which plaintiffs seek compensation for their counsel were reasonably and necessarily incurred in the continued prosecution of this action in post-judgment compliance proceedings." Furthermore, Defendants believe that Attorney Peter Cubra's time talking to witnesses is not part of the monitoring process but rather is time attributed "to a 'prefiling investigation' as part of the 'prosecution' of the case." Response at 7. In Plaintiffs' Reply to Defendants' Opposition to Motion for Attorneys' Fees and Expenses (Reply)(Doc. No.1554), filed January 8, 2007, Plaintiffs clarified that they are seeking compensation for reasonable monitoring of ongoing court judgments and are not engaged in a "continued prosecution" of Defendants. Moreover, Mr. Cubra explained in his supplemental affidavit at ¶ 17 (attached to Reply) that the "witnesses" he speaks with are persons who contact him or other Plaintiffs' attorneys with information that may lead the Plaintiffs to discover monitoring problems. The Court finds that Plaintiffs' activities for July through September 2006 were not prosecutorial in nature.

*2. Are Monitoring Activities Compensable?*

■ Defendants further argue that Plaintiffs' attorneys' monitoring activities are simply not compensable even if Plaintiffs prevailed earlier by obtaining a consent decree. Defendants note that the Joint Stipulation on Disengagement (JSD) (Doc. No. 1064) at ¶ 45, filed December 19, 1997, is the only court document in which compensation of Plaintiffs for monitoring expenses is mentioned in this case. The JSD states:

If the Court determines that the defendants have complied with the provision of this Stipulation, or appendix or desired outcome of the Plan, it shall terminate its oversight of, but not dismiss, that provision, appendix, or outcome. In such event, the defendants shall no longer be required to compensate the plaintiffs' counsel for time spent monitoring such provision, appendix, or outcome.

Defendants contend that since the JSD was adopted, the United Supreme Court issued an opinion in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) which precludes Plaintiffs from receiving compensation for monitoring activities. *Buckhannon*, however, is not on point with respect to post-judgment monitoring. *See Grier v. Goetz*, 421 F.Supp.2d 1061, 1071 (M.D.Tenn.2006)("Buckhannon does not discuss post-judgment or post-consent-decree litigation."); *Rolland v. Romney*, 292 F.Supp.2d 268, 272 (D.Mass.2003)("Buckhannon did not directly address the compensability of post-settlement monitoring...."). The issue in *Buckhannon* was whether the term "prevailing party" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree but has, nonetheless, achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct[, the so-called catalyst theory]." *Buckhannon*, 532 U.S. at 600, 121 S.Ct. 1835. The Tenth Circuit, on the other hand, has ruled directly on the issue of the availability of reasonable attorney's fees for post-judgment monitoring of consent decrees and has held that reasonable attorney's fees are available to previously prevailing parties for post-judgment monitoring of consent decrees. *Joseph A. by Wolfe v. New Mexico Dept. of Human Services*, 28 F.3d 1056, 1059 (10th Cir.1994)(citing *Diaz v. Romer*, 961 F.2d 1508, 1511 (10th Cir.1992))(citing *Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir.1989)).

■ The Defendants also argue that under the JSD the job of monitoring is presently being performed by the community monitor so there is no need to compensate Plaintiffs for monitoring activities. Defendants cite to a Seventh Circuit case, *Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir.2004), to support that argument. Defendants, however, ignore *Duran* in which the Tenth Circuit rejected defendants' argument that plaintiffs' monitoring was unnecessary and duplicative because of the presence of both a Special Master and defendants' own internal monitor. 885 F.2d at 1495. The Tenth Circuit stated that to accept defendants' argument "would mean that the plaintiffs must accept reports of the Special Master and the defendants' own compliance officer at face value and they would be unable to make any real challenge, backed with facts established by monitoring, to such reports." *Id.* Moreover, Plaintiffs note that continued monitoring by Plaintiffs' attorneys is essential in this case because the community monitor does not evaluate 75% to 80% of the class members in any way during the annual audit since only 100 class members are evaluated yearly. Supplemental Affidavit of Peter Cubra at ¶ 15 (attached to Reply). "In fact, there are some class members today who have never been evaluated in an annual audit, even though the audits have been conducted for nine years." *Id.* at ¶ 16. The community monitor, therefore, does not effectively monitor implementation of the consent decree as to all Plaintiffs. Consequently, Plaintiffs' attorneys are necessary to ensure effective and complete monitoring.

Finally, Defendants argue that the fact that they have acquiesced over the years to Plaintiffs' requests for attorneys' fees and expenses does not preclude Defen-

dants from refusing to pay fees and expenses now. Defendants cite to *Barcia v. Sitkin*, 367 F.3d 87, 109 (2nd Cir.2004) to support that argument. *Barcia* states:

> We need not decide whether an obligation not unambiguously mandated by a consent decree can be imposed on a state entity on the basis of the parties' conduct, although we find the proposition doubtful, *see Tourangeau*, 101 F.3d at 307 ("[A] district court may not impose obligations on a party that are not unambiguously mandated by the decree itself." (citation omitted)); *King*, 65 F.3d at 1058 ("[A] decree is the sole source of the parties' rights.").

*Barcia* is inapplicable to this case because the JSD in this case actually refers to attorneys' fees for monitoring, albeit, in an indirect manner. The Court concludes that Plaintiffs' attorneys' monitoring activities are compensable.

### 3. Did Plaintiffs' Attorneys Engage in Activities that Went Beyond Monitoring?

■ Defendants argue next that several of Plaintiffs' attorneys' activities during July through September 2006 went beyond monitoring and therefore, are not compensable. The activities Defendants refer to involved the termination of services provided by Desert States and ResCare[2] and the subsequent replacement of case managers and relocation of 66 Plaintiffs from ResCare facilities to other appropriate care givers. The New Mexico State Department of Health (DOH) apparently contracted with an organization called "the Columbus Organization" to provide additional personnel to transition the 66 Plaintiffs and others from ResCare to other care givers.[3] According to Defendants, the transition was completed in a very short time through the work of the community system and DOH employees. Consequently, Defendants contend that "Plaintiffs should be paid nothing for their time in attempting to micromanage the Department's transitions from these providers." Response at 5. Even so, Defendants admit that about twelve clients, presumably Plaintiffs, still need additional services to complete the transition and that minor problems occurred during the transition but were corrected. Plaintiffs argue that such a large upheaval of services required monitoring by Plaintiffs' attorneys to ensure the well-being of the Plaintiffs who were transitioned as well as the well-being of those Plaintiffs whose transitions have not yet been completed. The Court agrees with Plaintiffs and finds that Plaintiffs' attorneys' activities regarding the transition of Plaintiffs following the termination of services provided by Desert States and ResCare constitute compensable monitoring activities.

### 4. Defendants' Particularized Objections to Bills and Expenses

#### (a) Can the Plaintiffs Unilaterally Increase the Hourly Rate of Attorneys' Fees?

■ The attorney hourly rates sought by Plaintiffs reflect a 10% increase from previous hourly rates.[4] Defendants argue

---

**2.** Desert States provided case management services to Plaintiffs and ResCare provided Plaintiffs with day and residential services.

**3.** Elin Howe, the internal monitor for this case, belongs to the Columbus Organization.

**4.** Plaintiffs' attorneys seek the following hourly rates:
 1. Protection & Advocacy (P & A):
 Attorney Dennis Drucker, $175 per hour,

Attorney Sandra Gomez, $137.50 per hour, and
Paralegal Johanne Guyton, $85.00 per hour,
 2. Attorney Peter Cubra: $211.75 per hour,
 3. Center for Public Representation (Massachusetts):
 Attorney Steven Schwartz, $305.25 per hour, and

that Plaintiffs' attorneys' fees cannot be increased unilaterally. Defendants, however, do not provide any legal support for their argument. Defendants' argument that Plaintiffs cannot unilaterally increase their attorneys' fees is, therefore, without merit.

### (b) Are the Hourly Rates Charged by Plaintiffs' Attorneys Reasonable?

Next, Defendants assert that if monitoring activities are compensable only reasonable hourly rates are compensable. Defendants contend that the hourly rates for Mr. Schwartz and Ms. Costanzo, Plaintiffs' out-of-state attorneys, are higher than the New Mexico attorneys and that their travel expenses are excessive. To support this contention, Defendants attack Plaintiffs' reference to *Arnold v. Arizona Dept. of Health Services,* Maricopa County AZ, No. C–432355 in which Mr. Schwartz was paid $305.25 per hour, the same hourly rate Mr. Schwartz charged in this case. Defendants note that the parties in that case had stipulated to this hourly rate and that the total amount of attorneys' fees in that case was much less than those sought in this case. Defendants also cite to *Rolland v. Romney,* 292 F.Supp.2d 268 (D.Mass. 2003), another case in which Mr. Schwartz was an attorney. In that case, the court did not award Mr. Schwartz all the attorney's fees he had asked for. Finally, Defendants cite to *Lewis v. New Mexico Dept. of Health,* Civ. No. 99–0021 MV/JHG, a § 1988 case in which the Honorable Chief District Court Judge Martha Vazquez awarded attorneys' fees in the amount of $299,202.70 for five years of litigation.

■ Plaintiffs argue that Defendants' general objections to hourly rates and their references to other cases are insufficient evidence of the unreasonableness of the hourly rates Plaintiffs request, especially in light of the well-supported affidavits and declarations submitted by Plaintiffs to establish the reasonableness of the hourly rates sought. The Tenth Circuit stated in *Martinez v. Roscoe,* 100 F.3d 121, 124 (10th Cir.1996) that "generalized objections to the amount of the fees awarded, without any 'evidence challenging the accuracy and reasonableness of the hours charged' " constitutes a waiver of the objecting party's "right to challenge the determination that the fees awarded were reasonable." In this case, Defendants have not provided adequate, admissible evidence of market rates which contradict the hourly rates Plaintiffs propose. Plaintiffs, on the other hand, have provided substantial evidence in the form of affidavits that the hourly rates they seek are actually below the market rate. The Court finds that the hourly rates charged by Plaintiffs' attorneys are reasonable.

### (c) Were Monitoring Related Activities Reasonably Necessary?

### (1) Certain Monitoring Related Activities

■ Defendants further argue that the attorneys' fees sought for certain monitoring related activities during July through September 2006 were unnecessary and therefore, unreasonable. Defendants argue first that Plaintiffs are not entitled to the full amount of requested attorneys' fees for reviewing mortality review documents because Plaintiffs have not returned mortality review documents to Defendants as requested by Defendants. The appropriate avenue for compelling the return of

Attorney Cathy Costanzo, $218.35 per hour,

4. Attorney Ann Sims: $187.00 per hour, and

5. Attorney Phil Davis: $224.40 per hour.

the mortality review documents is through motion practice, not by reducing otherwise legitimate attorneys' fees. Hence, Defendants have failed to show that Plaintiffs are not entitled to attorneys' fees associated with the review of mortality review documents.

Second, Defendants contend that Plaintiffs are not entitled to the full amount of requested attorneys' fees for conferences Plaintiffs' attorneys had with the community monitor when Plaintiffs did not subsequently share the community monitor's advice with Defendants. Defendants did not provide the Court with any legal analysis as to why this failure to share the community monitor's advice should lead to a reduction of legitimate attorneys' fees. Defendants also did not present an affidavit or other evidence to verify their allegation that Plaintiffs did, in fact, not share the community monitor's advice with them. Plaintiffs are, likewise, entitled to attorneys' fees related to attorney conferences with the community monitor.

Third, Defendants assert that attorneys' fees for developing protocols not given to Defendants should be denied, and if a protocol is released to Defendants, the amount of attorneys' fees associated with the development of the protocol should be reduced. Again, Defendants did not provide any legal or factual support for their assertions that Plaintiffs are not entitled to attorneys' fees for developing protocols not released to Defendants or that those fees should be reduced. Plaintiffs are entitled to attorneys' fees incurred with respect to the development of protocols.

Finally, Defendants contend that quarterly monitoring and report writing is excessive and is not even required by the JSD or by any other Court order. Nonetheless, Defendants suggest that monitoring and its accompanying report writing should be limited to once a year and should relate only to *Jackson* require-ments that have not been disengaged as required by the JSD. The Court, however, finds that quarterly monitoring and report writing are necessary and reasonable to monitor the implementation of the consent decree, thereby making those compensable activities.

(2) *Was There Unwarranted Duplication of Effort by Plaintiffs' Attorneys?*

Defendants argue next that there is unwarranted and unreasonable duplication of effort and cost because there are simply too many attorneys working for Plaintiffs. For example, Defendants contend that they should not pay for more than one attorney from P & A. Also, Defendants contend that the fact that Mr. Schwartz and Mr. Cubra share responsibility for coordinating the activities of Plaintiffs' attorneys has not actually reduced costs to Defendants. Defendants further argue that not all of Plaintiffs' attorneys need to attend the quarterly meetings nor do they all need to participate in deciding the agendas for those meetings. Other examples of alleged duplication include the participation of all of Plaintiffs' attorneys in telephone conferences, the participation of three attorneys to review new DD waiver standards, and the participation of seven attorneys to draft a letter to the Honorable Magistrate Judge Leslie Smith. Plaintiffs assert that multiple attorneys are necessary in order to effectively divide the labor in this complicated case.

The Court acknowledges the complexity of this case as well as the need to effectively represent this particularly vulnerable class. In a class action of this magnitude, multiple attorneys are often needed to ensure that there is proper monitoring of the implementation of the consent decree as to each individual class member. Having reviewed the various affidavits and declara-

tions submitted by Plaintiffs, the Court does not find that there was unnecessary duplication of effort.[5]

### (3) Are Out–Of–State Attorneys Mr. Schwartz and Ms. Costanzo Necessary?

Moreover, Defendants object to paying for out-of-state attorneys who do not actually monitor anything. Defendants note that the New Mexico attorneys are experienced and capable attorneys who should not need the assistance of out-of-state attorneys. The Defendants have not persuaded the Court that there is any legally sufficient reason for excluding the assistance of out-state-attorneys who specialize in class action lawsuits like this one. Depriving Plaintiffs of the best attorneys they can retain would create an injustice. Hence, Plaintiffs are entitled to the reasonable attorneys' fees and expenses billed by out-of-state attorneys Mr. Schwartz and Ms. Costanzo.

### (4) Are Plaintiffs Entitled to Attorneys' Fees and Expenses Associated with Plaintiffs' Motion to Compel Production of Documents Sought in Plaintiffs' Eighth Request for Production of Documents to Defendants (Motion to Compel)(Doc. No.1514), filed June 13, 2006?

Defendants assert that attorneys' fees and expenses incurred with respect to Plaintiffs' Motion to Compel should not be compensable because Defendants won that motion. *See* Memorandum Opinion and Order (Doc. No. 1526), filed Aug. 31, 2006 (denying Plaintiffs' Motion to Compel). Those attorneys' fees and expenses included travel to Las Cruces on August 8, 2006 to attend a hearing on the Motion to Com-

pel and a status conference held by Judge Smith. Plaintiffs counter this argument by noting that their attorneys, Mr. Cubra and Mr. Davis, did not charge for time expended on working on the Motion to Compel. After reviewing the time entries of Mr. Cubra and Mr. Davis, it appears that on July 26, 2006 Mr. Davis charged .2 hours for work on the Motion to Compel and fee issues and charged .8 hours for working on an outline for oral argument, presumably for the hearing on the Motion to Compel. Ex. 2, Aug. 22, 2006 invoice at 2 and Sept. 8, 2006 invoice at 1 (attached to Affidavit of Phillip B. Davis (Doc. No. 1538), filed Dec. 8, 2006). That total amount of time (1.0 hours), however, is accounted for in Mr. Davis' August 2006 billing in which Mr. Davis did not charge for 2.4 hours of work on the Motion to Compel despite marking by an asterisk a "no charge" of only 1.3 hours for work on the Motion to Compel. With respect to Mr. Cubra's billings, the Court notes that even though Mr. Cubra indicated "no charges" for work on the Motion to Compel on August 3, 2006 (.4 hours) and on August 7, 2006 (.7 hours), those hours apparently were not properly deducted from Mr. Cubra's billing, thereby inappropriately adding 1.1 hours to Mr. Cubra's billable hours for August 2006. Nonetheless, the Court observes that because Mr. Cubra's hourly rate of $211.75 is well below the market hourly rate of $250–275 per hour, *see* Affidavit of Peter Cubra (Doc. No.1536) at ¶ 9–¶ 11, filed December 8, 2006, the additional charge for 1.1 hours is readily absorbed by the below market hourly rate Mr. Cubra charged. Discounting the above minor charges, I conclude that Mr. Cubra and Mr. Davis essentially

---

**5.** Of course, Plaintiffs should be diligent in containing fees and expenses by, among other things, limiting attendance of attorneys to

hearings when feasible and reducing travel expenses by using video conferencing, if possible.

did not charge for work on Plaintiffs' Motion to Compel.

Plaintiffs also note that "Defendants mistakenly attribute to the motion to compel Mr. Cubra's time in fact spent not on that motion but rather traveling to Las Cruces and meeting with Judge Smith for the status conference portion of the [August 8, 2006] hearing held at the same time as the motion to compel." Reply at 16 n. 7. Mr. Cubra and Mr. Davis are entitled to attorneys' fees and expenses for traveling to Las Cruces to attend a status conference held before Judge Smith.

### (d) Should Mr. Davis Be Compensated for His Work as a Fee Attorney?

■ Defendants object to paying Mr. Davis for his work as a fee attorney. Although Defendants admit that there is precedence for paying a fee attorney when attorneys' fees are litigated, Defendants argue that Mr. Davis' review of attorneys' fees bills could be done by a paralegal at a much reduced hourly rate. Mr. Davis argues that his role as fee counsel included not just compiling bills but also included the review and editing of those bills to insure "that plaintiffs' counsel have all exercised billing judgment in the preparation of their time and expense records and avoids duplication in billings," and the negotiation and resolution of billing disputes. Reply at 15. Mr. Davis further notes that he also worked on the merits of the case. Since Mr. Davis's activities as a fee attorney involved more expertise than could be expected of a paralegal, Mr. Davis should be compensated for his work as a fee attorney as well as for his work on the merits of this case.

___

6. Defendants claim for the first time in their amended opposition to the motion for attorneys' fees and expenses that Lexis services also constitute an overhead expense. Defendants then state that "[t]he court should re-

### (e) Expenses

### (1) Are Overhead Expenses Compensable?

■ Additionally, Defendants argue without any legal citation that overhead expenses for postage, copies, and fax charges should not be allowed.[6] Defendants also appear to contend that if copy and fax charges are permitted, Plaintiffs should be paid only for copying documents provided to Defendants and only for fax charges used to communicate with Defendants. Moreover, Defendants assert that copy and fax charges should be billed at CJA rates. Under 42 U.S.C. § 1988, litigation expenses incurred in civil rights cases that are normally itemized and billed in addition to the attorney's hourly rate may be awarded as part of attorneys' fees. See Brown v. Gray, 227 F.3d 1278, 1297–98 (10th Cir.2000) (citations omitted). Mr. Davis indicates in his affidavit at ¶ 35, that the expenses Plaintiffs seek are normally itemized and billed to clients. Also, the Court notes that it is important for coordination purposes that Plaintiffs' attorneys are able to communicate with each other through the use of copying and faxing. Consequently, copy and fax charges should not be limited to communications with only the Defendants. The Court further notes that Defendants have not provided any legal support for their argument that CJA rates must be charged for copy and fax expenses. Hence, Plaintiffs' expenses for postage, copies, and fax charges incurred during July through September 2006 are compensable.

### (2) Other Expenses

Defendants observe in their amended opposition to Plaintiffs' motion for attor-

___

quire a justification of expenses." Amended Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses at 6. Defendants, however, do not explicitly argue that Lexis services are not compensable.

neys' fees and expenses that travel time and other time should be separated if travel time is paid at half the hourly rate. Defendants cite to time entries made by Ms. Sims and Mr. Cubra as examples of combining travel time with time spent on other legal work. Interestingly, Defendants do not argue that those reported times should be reduced or eliminated.[7] Nonetheless, it would be helpful in the future to separate travel time from time devoted to other services where travel time is charged at less than the full hourly rate.

Moreover, Defendants argue that the Court should disallow expenses unrelated to a *Jackson* requirement. Although Defendants specify entries that supposedly reflect non-*Jackson* expenses, the Defendants do not explain why each of those entries is not related to monitoring activities which are compensable. Without such a detailed explanation, the Court will not disallow those expenses. In sum, Plaintiffs' expenses for July through September 2006 appear to be reasonable and compensable.

### 5. Defendants' Proposed Guidelines for Awarding Attorneys' Fees and Expenses

Defendants propose the following guidelines for determining future attorneys' fees and expenses:

1. Only one Plaintiffs' attorney should attend meetings with Defendants' counsel,

2. Field monitoring should be done by paralegals, not attorneys;

3. Plaintiffs' attorneys should be paid half of their hourly rate for travel;

4. State per diem rates should apply for travel ($85.00 per day);

5. Defendants should not pay for overhead expenses like photocopying;

6. Defendants should not pay for participation of out-of-state attorneys;

7. Defendants will pay for only one conference call a month for Plaintiffs' counsel;

8. Defendants will not pay for time spent preparing Plaintiffs' attorneys' bills;

9. Only one attorney from P & A will be involved in this lawsuit;

10. Defendants will not pay for discussions between members of the same law firm; and

11. There will be a yearly cap of $200,000 (100 hours per month at about $200.00 per hour).

Plaintiffs argue that the Court cannot adopt any these proposed guidelines in view of the well-established law requiring a lodestar determination of reasonable attorneys' fees and costs. Plaintiffs also argue that ruling that a cap should apply would be the equivalent of issuing an advisory opinion without knowing what sort of attorneys' fees and expenses will be incurred in the future. Plaintiffs are correct. Defendants' proposed guidelines are simply not appropriate.

### B. Conclusion

Plaintiffs are entitled to compensation for the monitoring activities of their attorneys for July through September 2006. The hourly rates and hours of Plaintiffs' attorneys as presented in their detailed affidavits and declarations are reasonable. The expenses Plaintiffs incurred are, likewise, reasonable. Consequently, the Court will award Plaintiffs a total of $91,540.08 (including gross receipts tax) for July

---

**7.** Additionally, Defendants allege that Mr. Cubra's expenses for travel to Santa Fe on August 29, 2006 should be denied because that meeting was actually held in Albuquerque.

Defendants have not provided any factual support such as an affidavit to prove this allegation.

through September 2006. Furthermore, the Court rejects Defendants' proposed guidelines for determining future attorneys' fees and expenses.

IT IS ORDERED that:

1. Defendants' Motion for Leave to Amend Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses and Defendants' Request that the Court Impose Clear Guidelines for the Payment of Attorneys' Fees (Doc. No. 1561) is granted to the extent that the Court considered it in deciding Plaintiffs' Motion for Attorneys' Fees and Expenses for July–September 2006 (Doc. No. 1534);

2. Plaintiffs' Motion for Attorneys' Fees and Expenses for July–September 2006 (Doc. No. 1534) is granted in its entirety;

3. Defendants must pay Plaintiffs $91,540.08 by July 1, 2006 for the reasonable attorneys' fees and expenses Plaintiffs incurred during July through September 2006; and

4. Defendants' request to implement proposed guidelines for determining attorneys' fees and expenses is denied.